**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
        **Plaintiff,**

-vs-                                        **Case No. 6:07-cv-1548-Orl-28GJK**

**PAPIN ENTERPRISES, INC., PAPIN, INC., and DOCTOR'S ASSOCIATES, INC.,**
        **Defendants.**
_____

# ORDER

The United States Equal Employment Opportunity Commission ("EEOC") initiated this action in September 2007 by filing a Complaint (Doc. 1) alleging that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended ("Title VII"), by discriminating against Hawwah Santiago ("Ms. Santiago") based on her religion. This cause is before the Court on the motions for summary judgment filed by Defendants Papin Enterprises, Inc. and Papin, Inc. (collectively "the Papin entities") (Doc. 42) and by Defendant Doctor's Associates, Inc. ("DAI") (Doc. 41). The Court heard argument on these motions on April 1, 2009 and, having considered the parties' submissions[1] and pertinent law, concludes

---

[1]The pertinent filings include: Defendant Doctor's Associates Inc's. Motion for Summary Judgment (Doc. 41); EEOC's Opposition to DAI's Motion for Summary Judgment (Doc. 43); Defendant Doctor's Associates Inc.'s Reply in Support of Its Motion for Summary Judgment (Doc. 54); EEOC's Surreply to Defendant DAI's Reply (Doc. 60); Motion for Summary Judgment Submitted on Behalf of Defendants, Papin Enterprises, Inc., and Papin, Inc. (Doc. 42); EEOC's Opposition to Papin's Motion for Summary Judgment (Doc. 55); Papin's Reply in Support of Motion for Summary Judgment (Doc. 70); and EEOC's Surreply to Papin's Summary Judgment Reply (Doc. 71).

that both motions must be denied.

## I. Background

Defendant DAI, a Florida corporation headquartered in Connecticut, "is the owner of the proprietary and other rights and interests in various service marks, trademarks, trade names, and goodwill used in its business including the trade name and service mark 'Subway.'" (Franchise Agreement, Ex. 14 to Doc. 45, at 1). Subway® sandwich shops are operated as franchises under contract with DAI for use of the Subway® marks.

The Papin entities are businesses owned by Joseph Papin ("Mr. Papin"). (See Papin Aff., Ex. E to Doc. 41). In March 1996 and February 1997, Mr. Papin entered into two franchise agreements with DAI for the operation of two Subway® shops in New Smyrna Beach, Florida. (See Ex. C to Doc. 41). The March 1996 agreement pertained to establishment of a store for Papin, Inc. (Store #16975), while the March 1997 agreement led to establishment of a store for Papin Enterprises, Inc. (Store #2350).[2] (Joint Pretrial Statement, Doc. 88, at 12). From December 2005 until May 3, 2006, Ms. Santiago worked at one of the Subway® sandwich shops operated by Mr. Papin. She was hired as a Sandwich Artist®[3] and was promoted to assistant manager in March 2006.

In addition to contracting with franchisees, DAI also maintains a contract with Subway

---

[2] The Franchise Agreements allowed Mr. Papin to assign his rights to operate the sandwich shops to a corporation. (See, e.g., March 1996 Franchise Agreement, Ex. 14 to Doc. 45, at 6). The Court assumes that this occurred.

[3] The Subway® Employee Handbook defines "Sandwich Artist®" as "an employee who has mastered the skills necessary to create a 'picture perfect' sub each and every time." (Employee Handbook, Ex. 17 to Doc. 45, at 5).

Development Corporation of Central Florida, Inc. ("Subway Development"), pursuant to which Subway Development conducts periodic on-site monitoring visits of Subway® franchises. (See Sanders Aff., Ex. D to Doc. 41). During a routine monthly site visit in February 2006, a Field Consultant for Subway Development, Bob Fischer, found Papin Enterprises, Inc. out of compliance with its commitments to DAI based in part on an employee at its Subway store wearing a nose ring. (Id. ¶ 4). At another site visit the next month, Mr. Fischer again noted a compliance issue based on an employee wearing a nose ring. (Id. ¶ 5).

Mr. Papin told Ms. Santiago to remove her nose ring because it was contrary to the no-facial-jewelry policy set forth in the Subway® Employee Handbook,[4] but she refused, explaining that her wearing of the nose ring was religious in nature. Although there is some dispute in the record as to exactly what transpired between Mr. Papin, Ms. Santiago, and DAI at that point, there is evidence that, acting on Ms. Santiago's behalf, Mr. Papin requested a waiver of the no-facial-jewelry policy, and DAI requested documentation supporting the religious nature of the nose ring. Ms. Santiago provided Mr. Papin with a note from her mother and from herself regarding her religion. There is also evidence that Ms. Santiago was asked for some sort of "religious text" or a "note from a minister" to support the waiver request. Ms. Santiago did not provide any religious text or note from clergy, asserting that she has no minister.

---

[4]As noted by DAI, the Employee Handbook incorporates DAI's Operations Manual as well as food safety guidelines provided by the National Restaurant Association. (See Doc. 41 at 6-7).

-3-

In a letter to Ms. Santiago dated April 28, 2006, Mr. Papin recounted the history of the nose ring dispute and advised her that he had spoken with Curtis DiPasqua, a subcontractor to DAI and its Development Agent for central Florida, and had been told "that Subway Headquarters has denied a waiver because it is unaware of any religion that requires a nose ring." (Letter from Papin to Santiago, Apr. 28, 2006, Ex. 3 to Doc. 45). The letter also informed Ms. Santiago that she had to comply with Subway's uniform policy by removing the nose ring and that if she did not "show some sort of *bona fide* documentation regarding [the] nose ring and its significance to [her] religion within five days" then Mr. Papin would have to "comply with Subway's policy regarding nose rings," meaning that "after the five day grace period has elapsed . . . [she] must not wear the nose ring while . . . working at the Subway restaurant." (Id.) (emphasis in original). The letter advised her that if she was "observed wearing the nose ring while at work, [she would] be terminated for insubordination and violation of company policy." (Id.).

Ms. Santiago did not provide any documentation to Mr. Papin during the five-day period, and she refused to remove the nose ring while working. True to his word, Mr. Papin accordingly terminated her on May 3, 2006. Mr. Papin acknowledges that the reason Ms. Santiago was terminated was because she refused to remove her nose ring and not for any performance-related or other reason. Mr. Papin regarded Ms. Santiago as a good employee and did not want to fire her but for the issue of his store being deemed out of compliance because of Ms. Santiago's insistence on wearing the nose ring.

Ms. Santiago filed a Charge of Discrimination with the EEOC, alleging that she believed she had been terminated based on both her religion and her race. (Ex. A to Doc.

41). The EEOC then brought this suit,[5] alleging only religious discrimination against Defendants. (Compl., Doc. 1). The EEOC contends that Defendants failed to fulfill their obligation under the law to reasonably accommodate Ms. Santiago's religious practice, that they terminated her because her religious practice was in conflict with her employment, and that they maintained a policy or practice which violates Title VII's prohibition on religious discrimination. (See id. at 3-4). The EEOC seeks injunctive relief, damages for Ms. Santiago, and "punitive damages for Defendants' malicious and reckless conduct." (Id. at 4-5).

## II. Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. When faced with a "properly

---

[5]Civil actions by the EEOC are provided for in 42 U.S.C. § 2000e-5(f)(1).

supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[T]he summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Chapman v. AI Transp., 229 F.3d 1012, 1026 (11th Cir. 2000).

### III. Discussion

Even more so than in most cases, the parties present vastly different assessments of the merits of this dispute. The EEOC alleges that Defendants acted with "malice or with reckless indifference" to Ms. Santiago's rights, (Compl. at 4), while Defendants contend that "this litigation is frivolous, should never have been initiated, and can only be described as vexatious," (Doc. 42 at 3). As with most cases, the Court views the matter as falling

somewhere in the middle of these two poles; the Court cannot discern a basis in the record for imposition of punitive damages for malicious or reckless conduct by the Defendants, nor can it describe the EEOC's legal positions as wholly without foundation.

Title VII

Title VII provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). The "Definitions" section of the statute provides that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

In a religious discrimination case involving a failure to accommodate,[6] a Title VII

---

[6]The EEOC also attempts to argue a disparate treatment claim in this case along with its failure-to-accommodate claim, and it argues that Defendants have not addressed the disparate treatment claim. However, this case clearly is a failure-to-accommodate case, and the Court finds no evidence to support a disparate treatment theory. Even if that theory could potentially fit the factual scenario presented here, it would fail.

A prima facie case of disparate treatment—here, discriminatory termination based on religion—requires the EEOC to show: (1) that Ms. Santiago is a member of a protected class; (2) that she was qualified for her job; and (3) that she was terminated and replaced by someone outside her protected class. The Court accepts for summary judgment purposes that Ms. Santiago is a member of a protected class as a "Nuwaubian," and there is no dispute that she was qualified to do her job. However, in attempting to establish the third prong of the prima facie case, the EEOC asserts that Ms. Santiago was replaced by "an employee whose religious affiliation is unknown." (Doc. 55 at 17). This does not establish that the replacement was outside Ms. Santiago's protected class; the replacement could also

plaintiff establishes a prima facie case by showing "(1) [s]he had a bona fide religious belief that conflicted with an employment requirement; (2) [s]he informed h[er] employer of h[er] belief; and (3) [s]he was discharged for failing to comply with the conflicting employment requirement.'" Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1321 (11th Cir. 2007). If the plaintiff establishes a prima facie case, the burden shifts to the employer

---

have been Nuwaubian.

    If the EEOC had presented a prima facie case, the burden would shift to Defendants to articulate a legitimate, nondiscriminatory reason for its termination of Ms. Santiago. Defendants state that they terminated her for failing to remove the nose ring—in violation of Subway's policy barring facial jewelry. The EEOC argues that this is not a nondiscriminatory reason because Ms. Santiago's religion is the reason she wore the nose ring and thus "when [she] was fired for wearing a nose ring to work, she was fired because of religion." (Doc. 55 at 17). However, this is not the proper method of assessing the legitimacy of an employer's reason in the burden-shifting framework developed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. The reason stated is facially legitimate—there was a policy against the wearing of nose rings, and Ms. Santiago refused to comply with it. The fact that she refused to comply with it because of her religious beliefs illustrates why this case is an accommodation case and not a disparate treatment case.

    In any event, because the Defendants have articulated a facially legitimate reason, in order to survive summary judgment the EEOC would have to present evidence creating a genuine issue of material fact as to whether Defendants' explanation was merely a pretext for discrimination. There is no evidence that Ms. Santiago's failure to comply with the policy was not the real reason for her termination.

    This is not to say that there will be no case where both theories are viable. Here, however, there is no evidence of an intent to discriminate against Ms. Santiago because of her religion and to fire her because of her religious beliefs. She was fired for her failure to comply with the nose ring policy, and the issue presented on these facts is whether Defendants failed to accommodate her religion, not whether they fired her for her beliefs.

    Finally, to the extent the EEOC is attempting to pursue a disparate treatment theory based on alleged tolerance of other employees' wearing of nose rings, the claim also fails. Mr. Papin has stated in an affidavit that although other employees at times would show up to work wearing a nose ring, whenever he noticed it he demanded that it be removed and imposed or threatened discipline because of it. (See Papin Aff., Ex. E to Doc. 42, ¶ 8). The EEOC has not presented any competent evidence challenging this sworn statement. Thus, this claim does not survive. The crux of this case is clearly the issue of failure to accommodate, not disparate treatment.

to demonstrate that it cannot reasonably accommodate the belief or practice without undue hardship.  Id. (citing 42 U.S.C. § 2000e(j)).

### Prima Facie Case

The second and third elements of the prima facie case are plainly satisfied; it is not disputed that Ms. Santiago informed Mr. Papin of her belief or that she was discharged for failing to comply with the policy barring facial jewelry.  It is also clear that part of the first element—that Ms. Santiago's belief conflicted with an employment requirement—is met.  And, for the purposes of summary judgment, Defendants no longer challenge the EEOC's satisfaction of the rest of the first prong; in their motion papers, Defendants challenged the sincerity of Ms. Santiago's belief and the religious nature of it, but at oral argument, counsel for Defendants acknowledged that the matter of whether her beliefs are sincerely held is a question of fact and cannot be resolved at this stage of the proceedings.  Thus, summary judgment cannot be granted based on failure to state a prima facie case, and the Court assumes for the purposes of summary judgment that a prima facie case has been presented.

### Reasonable Accommodation and Undue Hardship

To rebut the prima facie case, an employer must show that it was unable to reasonably accommodate the employee's religious practice without undue hardship on the conduct of its business.  Defendants argue that they are entitled to summary judgment because Ms. Santiago refused reasonable accommodations that were offered to her and refused to cooperate in the reasonable accommodation interactive process. They also argue that she could not be accommodated without undue hardship.

As the Court of Appeals for the Eleventh Circuit has noted, "[t]he phrases 'reasonably accommodate' and 'undue hardship' are not defined within the language of Title VII," and "[t]hus, the precise reach of the employer's obligation to its employee is unclear under the statute and must be determined on a case-by-case basis." Beadle v. Hillsborough County Sheriff's Dep't, 29 F.3d 589, 592 (11th Cir. 1994); accord Bush v. Regis Corp., 257 F. App'x 219, 221 (11th Cir. 2007). However, "the Supreme Court has explained that a reasonable accommodation is one that 'eliminates the conflict between employment requirements and religious practices.'" Morrissette-Brown, 506 F.3d at 1322 (quoting Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 70 (1986)).

"[C]ompliance with Title VII does not require an employer to give an employee a choice among several accommodations; nor is the employer required to demonstrate that alternative accommodations proposed by the employee constitute undue hardship." Beadle, 29 F.3d at 592 (citing Ansonia Bd. of Educ., 479 U.S. at 68). "[T]he inquiry ends when an employer shows that a reasonable accommodation was afforded the employee, regardless of whether that accommodation is one which the employee suggested." Id.

Defendants assert that they offered Ms. Santiago two reasonable accommodations, both of which she refused. First, they offered to allow her to cover the nose ring with a flesh-colored Band-Aid. Second, they assert that they offered to allow Ms. Santiago to leave the store when the inspector from Subway Development came by each month so that the store would not be written up as "out of compliance" based on her wearing of the nose ring. In light of case law providing that "the inquiry ends" once it is shown that a reasonable accommodation was afforded, Defendants argue that they should prevail on summary

judgment due to these offers. The EEOC, however, argues that neither of these accommodations was reasonable because neither "eliminated the conflict" between the employment requirement and the religious practice.

Although the parties disagree regarding whether Ms. Santiago initially accepted the offer to wear a Band-Aid over her nose ring, it is undisputed that she ultimately rejected it. The EEOC argues that the Band-Aid was not a reasonable accommodation, relying heavily on EEOC v. Red Robin Gourmet Burgers, Inc., No. C04-1291JLR, 2005 WL 2090677 (W.D. Wash. Aug. 29, 2005), in which an employee whose wrists were tattooed as part of his religious observance refused to cover up the tattoos when requested by the employer because to do so would amount to sacrilege. The Red Robin court found the plaintiff's statement sufficient to establish, for summary judgment purposes, that he had sincere religious beliefs that prevented him from covering up the tattoos to conform to the employer's dress code barring visible tattoos. Defendants assert that Red Robin is distinguishable because Ms. Santiago has acknowledged that it is "not a sin" in her religion to not wear a nose ring. However, Ms. Santiago also stated that to wear the Band-Aid over her nose ring would be "like abnegating [her] religion." (Santiago Dep., Attach. to Doc. 44, at 67). The Court cannot hold as a matter of law that the offer to cover the nose ring with the Band-Aid was an offer of a reasonable accommodation. Ms. Santiago's explanation that "it would be like abnegating her religion" to cover the nose ring with a Band-Aid is sufficient to preclude a determination that the Band-Aid suggestion was a reasonable accommodation as a matter of law.

With regard to the second proposed accommodation, the EEOC denies that Mr. Papin

offered Santiago the option of leaving the store when the inspector came by.[7]  Assuming arguendo that Mr. Papin offered Ms. Santiago this option, the Court rejects the proposition that such a proposal amounts to a reasonable accommodation.  As the Court indicated during oral argument, to endorse this practice would amount to encouraging subterfuge or fraud by the franchisee in order to enable it to avoid being deemed "out of compliance" by the auditors who visited the store on DAI's behalf.[8]

Defendants also argue that Ms. Santiago did not cooperate with Mr. Papin in the process of trying to come up with an accommodation.  They argue that she was not open to any suggestions and that for this reason the EEOC cannot prevail.  However, the Court cannot grant summary judgment to Defendants on this basis.  Ms. Santiago acknowledged in her deposition that Mr. Papin was trying to come up with a way to accommodate her religious beliefs so that he would not have to fire her.  (Santiago Dep. at 106).  She also stated in her deposition that she was not open to discussion of other ways that she could *wear* her nose ring, (Santiago Dep. at 231)—clearly, she was not willing to cover it up or to

---

[7] The EEOC has submitted an affidavit from Ms. Santiago in which she states: "At no time did Papin or Subway headquarters offer me the opportunity to work a different schedule so that I could continue to wear my religious nose ring at work. I would have been interested in a schedule change if it meant that I could keep working and also wear my religious nose ring." (Santiago Aff., Ex. G to Doc. 57, ¶ 5). Ms. Santiago stated in her deposition that Mr. Papin told her she could just *remove* the nose ring when the compliance auditor came by (Santiago Dep. at 231-32), but she not mention being offered to leave the store.

[8] Even if not for the "subterfuge" problem, the Court could not grant summary judgment to Defendants based on an offer to leave the store when the inspector came by because the evidence is disputed as to whether this offer was in fact made. Viewing the evidence in favor of the nonmovant, as the Court must on summary judgment, Ms. Santiago was only offered the option of *removing* the nose ring—something she was not willing to do, she maintains, because of her religion.

take it off. If Ms. Santiago's religious belief barred her from doing so, then logically she would not be open to suggestions about covering it up or taking it off. The question then becomes whether it was possible to accommodate her without undue hardship—the next step of the analysis—but her failure to agree to Mr. Papin's proposals or to come up with her own, assuming one is possible, does not warrant entry of judgment in favor of Defendants.

Because Defendants are not entitled to summary judgment on the basis of the offering of a reasonable accommodation, the Court turns to the question of undue hardship—that is, whether it was possible to accommodate Ms. Santiago's religious practice without undue hardship to Defendants. In arguing that it would be an undue hardship to accommodate Ms. Santiago by allowing her to wear the nose ring openly, Defendants rely on assertions of "food safety standards" and the decision in Cloutier v. Costco Wholesale Corp., 390 F.3d 126 (1st Cir. 2004). In Cloutier, a Costco employee who was a member of the Church of Body Modification refused to remove her eyebrow piercing, in violation of Costco's no-facial-jewelry policy. In affirming summary judgment for Costco on the employee's religious discrimination claim, the appellate court found that the employer could not accommodate[9] the employee without undue hardship because Costco had a legitimate interest in maintaining grooming standards and that preventing it from enforcing those standards would cause it to lose control over its public image.

Defendants argue that their case is even more compelling than that presented by

---

[9]The First Circuit Court of Appeals did not base its ruling on the reasonable accommodation issue, instead relying on the question of undue hardship. See 390 F.3d at 134.

-13-

Costco's "image"-based defense because "it is reasonable that a company operating restaurant outlets, such as Papin, would impose strict, uniform food-safety requirements as a part of its business model."[10] (Doc. 42 at 18). The Papin entities also note their contractual obligation to DAI to comply with DAI's requirements, including the policy barring facial jewelry. However, the Papin entities cannot sincerely argue that they had a strict food safety requirement barring nose rings while at the same time claiming that one of the proposed reasonable accommodations was to allow Ms. Santiago to wear the nose ring at all times while she was working in the restaurant but to permit her to leave when the compliance auditor came by. The Papin entities clearly did not care whether Ms. Santiago wore the nose ring or not; they only cared whether DAI found a store out of compliance for allowing an employee to wear a nose ring while working. Thus, the Papin entities are not entitled to summary judgment based on their assertion of undue hardship.

With regard to DAI, the resolution of the undue hardship issue is somewhat more complicated. Unlike the Papin entities, DAI was, as evidenced by the out-of-compliance reports of its inspectors, diligent in enforcing the no-facial-jewelry" policy. However, the record also reflects that DAI appeared willing to waive the policy *if* Ms. Santiago was able to present evidence satisfactory to DAI in the way of religious text or a note from a clergy member supporting the religious character of her wearing of the nose ring; the fact that DAI would be willing to waive the requirement creates, at a minimum, an issue as to whether the

---

[10]At oral argument, Defendants' counsel acknowledged that Defendants are not asserting that they had an image they were trying to protect based on grooming standards, as in Cloutier. Instead, Defendants rely only on alleged safety concerns as support for the policy barring facial jewelry.

safety standards it claims to require adherence to were actually important to DAI. Moreover, as the EEOC has pointed out, DAI allows the wearing of wristwatches and wedding bands, which are contrary to the food safety guidelines upon which DAI relies. DAI is not entitled to summary judgment on the undue hardship issue.

### DAI as "Employer"

In its summary judgment motion (Doc. 41), DAI argues—in addition to making the same arguments that the Papin entities make regarding the merits of the EEOC's claim—that it cannot be held liable under Title VII for Ms. Santiago's termination because it was not her "employer" as required for liability under the statute. DAI asserts that it cannot be regarded as a "joint employer" of Ms. Santiago and that it did not interfere with the employment relationship between the Papin entities and Ms. Santiago. In response, the EEOC avers that DAI can indeed be found liable, presenting three theories: that DAI and the Papin entities functioned as a single employer or integrated enterprise; that DAI and the Papin entities functioned as joint employers; and that DAI "adversely affected" Ms. Santiago's employment such that it can be held liable. These potential bases for liability are addressed in turn.

#### 1. Single Employer/Integrated Enterprise

The EEOC contends that DAI and the Papin entities "functioned as a single employer, or integrated enterprise, when they denied Santiago's request for a waiver of DAI's ban on nose rings and fired Santiago." (Doc. 43 at 16). Courts employ standards used by the NLRB in applying the "integrated enterprise" test, examining factors including: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." McKenzie v. Davenport-Harris Funeral Home, 834

F.2d 930, 933 (11th Cir. 1987). "The showing required to warrant a finding of single employer status has been described as 'highly integrated with respect to ownership and operations.'" Id. (quoting Fike v. Gold Kist, Inc., 514 F. Supp. 722, 726 (N.D. Ala. 1981)).

During oral argument, counsel for the EEOC acknowledged that this theory is its weakest with regard to holding DAI liable as an "employer" in the instant case. Indeed, the EEOC cannot prevail on this theory. The record evidence does not support a finding that operations were interrelated, that there was centralized control of labor relations, or that there was any common management, ownership, or financial control between DAI and the Papin entities. They cannot be regarded as an "integrated enterprise" as a matter of law.

2. Joint Employer

The EEOC also argues, but DAI disputes, that DAI can held liable as a "joint employer" of Ms. Santiago. "A 'joint employer' relationship is different from, though sometimes confused with, a 'single employer' situation." Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1359 n.6 (11th Cir. 1994). A joint employer relationship can be found where "'one employer[,] while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" Id. at 1360 (quoting NLRB v. Browning-Ferris Indus., 691 F.2d 1117, 1122 (3d Cir. 1982)). "'[T]he joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.'" Id. (quoting Browning-Ferris, 691 F.2d at 1122). The matter of whether the asserted joint employer "retained sufficient control is essentially a factual question." Id.

DAI contends that it cannot be found to be a joint employer because it was merely a franchisor, noting that franchisor-franchisee relationships are typically found not to result in "joint employer" liability for franchisors. DAI also points to paragraphs 5(c) and 11(a) of the franchise agreements. Paragraph 5(c) provides in part: "The Franchisee shall be solely responsible for recruiting, hiring, terminating and supervising all employees for the operation of his business and for setting employee pay rates, and for making payment of all wages and amounts due related to wages, including any employment benefits, unemployment insurance, and required federal, state or local withholding of taxes or other sums." (Ex. C to Doc. 41, at 4). Paragraph 11(a) provides that "[t]he Franchisee is, and shall be, identified at all times during the terms of this Agreement, as a natural person, an independent contractor and not an agent or employee of the Company." (Id. at 8).

DAI's reliance on its franchise agreements to avoid "joint employer" liability as a matter of law is unavailing. There is an issue of fact as to the degree of control that DAI exercised over the employment practice and decision at issue here. The parties have not made clear to the Court exactly how the waiver-request process operates. DAI asserted at oral argument that a franchisee need not consult DAI regarding a waiver of the no-facial-jewelry policy unless the franchisee is unable to work the issue out with the employee on its own; however, the fact that DAI must ultimately be consulted when disputes cannot be worked out at the franchisee-employee level and that Mr. Papin or his entities could not by themselves grant a waiver of the policy precludes a finding at this stage of the case that DAI did not have the requisite amount of control to qualify as a joint employer. While DAI also points out that the franchise agreement required the franchisee to comply with all laws,

including Title VII, DAI may have effectively prevented Mr. Papin from being able to comply by restricting or dictating his ability to address requests for religious accommodations or waivers on his own.

In sum, although Mr. Papin himself has maintained that the decision to terminate Ms. Santiago was his and his alone,[11] the Court cannot conclude at this stage of the case that DAI may not be held responsible as a joint employer. Cf. Virgo, 30 F.3d at 1361 ("[A]ctual control is a factor to be considered when deciding the 'joint employer' issue, but the authority or power to control is also highly relevant."). The cases upon which DAI relies where franchisors were not held liable involved general franchisee-franchisor relationship principles and not, as here, a situation where there is evidence that the franchisor had some power over, and became involved in, a specific dispute regarding terms and conditions of employment. See, e.g., Evans v. McDonald's Corp., 936 F.2d 1087, 1090 (10th Cir. 1991) (finding, in case involving claim of sexual harassment by employee at franchised restaurant, that McDonald's "did not exert the type of control that would make it liable as an employer under Title VII," noting that "McDonald's only real control over [the franchisee] was its power to terminate his franchises"). DAI is not entitled to summary judgment on this issue.

3. "Adversely Affected"

The EEOC also argues in its response to DAI's summary judgment motion that DAI can also be held liable under Title VII because it "adversely affected" Ms. Santiago's employment—the apparent flip side of the "noninterference" argument DAI makes in its

---

[11]The Papin entities and DAI are represented by the same counsel. As noted during oral argument, the Court is concerned about this dual representation.

motion. DAI asserts that it "is aware of no court decision holding that the mere existence of a franchise relationship supports a cause of action for third party interference under Title VII." (Doc. 41 at 14). However, as discussed in the prior section, more is involved in the unique circumstances of this case than "the mere existence of a franchise relationship." DAI is not entitled to summary judgment on this theory, as issues regarding DAI's retention and exercise of control create fact issues regarding DAI's potential liability in this case.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant Doctor's Associates Inc.'s Motion for Summary Judgment (Doc. 41) is **DENIED**.

2. The Motion for Summary Judgment Submitted on Behalf of Defendants, Papin Enterprises, Inc. and Papin, Inc. (Doc. 42) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida this 7th day of April, 2009.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party