**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

        **Plaintiff,**

**-vs-**                                      **Case No. 6:07-cv-1548-Orl-28GJK**

**PAPIN ENTERPRISES, INC., PAPIN, INC., DOCTOR'S ASSOCIATES, INC.,**

        **Defendants.**

_____

# ORDER

The Equal Employment Opportunity Commission ("the EEOC") filed this suit against Doctor's Associates, Inc. ("DAI"), the franchisor of Subway restaurants, and two of its franchisees, Papin Enterprises, Inc., and Papin, Inc. (collectively, "the Papin entities"). The EEOC alleged in the Complaint (Doc. 1) that Defendants discriminated against employee Hawwah Santiago ("Santiago") by failing to accommodate her religious practice of wearing a ring in her nose. In addition to compensatory damages, the EEOC sought injunctive relief and punitive damages.

The case proceeded to jury trial on the issue of whether Defendants had unlawfully discriminated against Santiago, but the parties stipulated that the issues of punitive damages and entitlement to injunctive relief were to be decided by the Court alone. The jury returned a verdict finding that Santiago did not wear the nose ring because of a sincerely held religious belief, and that finding was dispositive of the religious accommodation claim. The

parties disputed whether the jury's finding disposed of the entire case—Defendants took the position that absent a finding of discrimination against Santiago the EEOC had no further claims or relief to pursue, while the EEOC maintained that it could still obtain injunctive relief and punitive damages for what it regards as unlawful practices employed by DAI in considering whether to grant religion-based waivers of its uniform requirements. After the jury was discharged, the Court received additional testimony and argument on the issues of injunctive relief and punitive damages and allowed the parties to submit further briefing (Docs. 153 & 154). Having considered the evidence and the parties' submissions, the Court finds that the EEOC is not entitled to any relief in this case.

## I. Facts

For a few months in 2006, Santiago worked as a "sandwich artist" and assistant manager at a Subway restaurant owned by the Papin entities[1] in New Smyrna Beach, Florida. At some point during her employment, Santiago began wearing a metal ring in her nose. Joseph Papin ("Papin"), owner of the Papin entities, repeatedly asked Santiago to remove the nose ring while she was at work because it violated the no-facial-jewelry portion of the uniform policy set forth in the Subway Employee Handbook[2] and had resulted in

---

[1] Joseph Papin owns Papin Enterprises, Inc. and Papin, Inc. Santiago worked primarily at one of the stores, but both of Papin's corporations have been named as Defendants.

[2] The Subway Employee Handbook provides as follows regarding "Jewelry/Accessories":

> Minimum jewelry may be worn. The following is permissible:
> ◆ one plain ring
> ◆ non-dangling earrings may be worn in the ears only

Papin's restaurant being written up as "out of compliance" by a DAI subcontractor who routinely assessed the restaurant to ensure conformity to DAI's requirements. Santiago refused, stating that wearing the nose ring was a practice of her Nuwaubian religion. With the assistance of Papin, Santiago sought a waiver[3] of the uniform policy from DAI on

---

◆ a wrist watch
◆ plain necklaces, if worn, must be worn inside the uniform
*Any other visible parts of body may not be adorned with jewelry.*

(Pl.'s Trial Ex. 19 at 8) (emphasis in original). This handbook provision is less strict than, but based on, the ServSafe Essentials manual published by the National Restaurant Association. These ServSafe Essentials provide in part:

> ***Proper Work Attire***
> A foodhandler's attire plays an important role in the prevention of foodborne illness, so foodhandlers must observe strict dress-code standards. . . .
> Managers should make sure that foodhandlers observe the following guidelines regarding their attire.
>
> . . .
> ● **Remove jewelry prior to preparing or serving food or while working around food-preparation areas.** Jewelry can harbor microorganisms, can tempt foodhandlers to touch it, and may pose a safety hazard around equipment. Remove rings (except for a plain wedding band), bracelets, watches, earrings, necklaces, and facial jewelry (such as nose rings, etc.)

(Defs.' Trial Ex. 58 at 4-7).

[3]The DAI Operations Manual contained the following provision:

> **Uniform Waivers**
> If an employee needs to deviate from the uniform policy for religious reasons or to accommodate special needs, you must submit a written request to your DA/ADM [Development Agent/Area Development Manager] detailing the reasons for the deviation. Upon review, your DA/ADM will send the request to HQ for consideration. The Operations Department will forward a written response to your DA/ADM explaining the parameters

religious grounds. As a part of the waiver process, DAI requested written verification of the Nuwaubian practice of wearing nose rings. No such documentation was provided to DAI. Eventually, Papin fired Santiago when she persisted in wearing her nose ring, and the EEOC brought this suit on her behalf.

As earlier noted, the jury found that Santiago's wearing of the nose ring was not based on a sincerely held religious belief. (See Verdict, Doc. 139). However, after that finding was made, the EEOC continued to press its claim to an entitlement to injunctive relief and punitive damages based on DAI's practice of asking employees for documentation supporting requests for religion-based waivers—a practice that the EEOC regards as improper under Title VII. The parties presented this part of the case, including the matter of whether there was indeed any part of the case remaining for the EEOC to pursue, to the Court, without a jury. The EEOC did not present any live testimony during this phase of the trial, instead relying on the deposition testimony of Timothy Miller, an operations specialist for DAI who administers DAI's uniform policy and handles requests for waivers from it. DAI also relied on Miller's deposition testimony and called one witness, Steven Lawrence, DAI's Assistant Director of Operations, .

Miller testified in his depositions[4] regarding his practice upon receipt of requests for

---

of the deviation or the reasons for denial.

(Pl.'s Trial Ex. 25 at 14.10).

[4]One deposition of Miller was taken by the EEOC in August 2008, and one was taken by Defendants, with permission of the Court, in March 2009 after it became apparent that Miller would be unavailable to testify at trial.

-4-

waivers of the uniform policy. Miller stated that when such a request was received, he looked for something to support a waiver; in the case of a religion-based request, he typically looked for "any form of religious text." (Miller March 2009 Dep. at 13). Once he received some type of documentary support for a request, Miller conducted research to "verify" the support. (Id. at 68). If there were no documentation available to support a religion-based request, Miller would request to speak to an elder or other religious figure. (Id. at 69). Miller also testified that if an employee requesting an accommodation claimed to adhere to a religion that did not have documents or clergy, he would consider the word of the employee as verification of such a "religion of one," though he had never been faced with such a situation. (Id. at 70-74). Miller could not recall any occasion in the five years that he had been handling uniform waivers that he had rejected any religious documentation as inadequate. (Id. at 14).

Lawrence testified that in January 2009, DAI changed its practice regarding both jewelry waivers and the handling of requests for religious accommodations. Lawrence explained that Miller, who reports to him indirectly, no longer requests any documentation of any kind when presented with a request for a uniform waiver based on religion. (Trial Tr. Excerpt, Doc. 146, at 5-6). Additionally, all requests for waivers for the wearing of jewelry are now rejected by DAI based on food safety guidelines. (Id. at 6).

## II. Discussion

This case is unusual in that the EEOC is seeking relief notwithstanding the jury's finding that Defendants did not discriminate against Santiago as alleged in the EEOC's Complaint. The EEOC maintains that DAI's practice of "requiring franchisee employees to

prove that their requested observance or practice is required by their faith" is itself a violation of Title VII. (Pl.'s Br., Doc. 154, at 2). The EEOC argues that through this practice, DAI impermissibly passes on the validity of the employees' religious beliefs rather than on the sincerity of those beliefs. The EEOC contends that Miller's routine efforts to verify the religious practices of Subway employees in considering their requests for uniform and jewelry waivers entitle it to injunctive relief[5] and punitive damages.

DAI, on the other hand, asserts that in light of the jury's verdict finding that it did not discriminate against Santiago, the EEOC is not entitled to relief. DAI emphasizes that the EEOC did not bring a pattern and practice claim under § 707 of Title VII (42 U.S.C. § 2000e-6), instead bringing the case only under § 706 of Title VII (42 U.S.C. § 2000e-5). DAI avers that in the absence of § 707 allegations, the EEOC has no standing to pursue claims on its own behalf now that the claim regarding Santiago has been resolved in Defendants' favor by a jury. Alternatively, DAI asserts that even if the EEOC may properly pursue a policy claim at this juncture, there is no basis for an award of injunctive relief or punitive damages.

DAI is correct that the allegations of the Complaint are focused on Defendants' treatment of Santiago and not on practices that allegedly resulted in discrimination against, or failure to accommodate, anyone else. Nearly every paragraph of the Complaint mentions Santiago by name as the victim of Defendants' actions. Although there is one generally-

---

[5]As injunctive relief, the EEOC requests that the Court enter an order enjoining such conduct in the future; requiring DAI to receive outside training and to advise franchise employees of a new policy not requiring evidence in support of a request to accommodate a religious practice or belief; and mandating that DAI submit a report to the EEOC every six months describing each religious waiver request and how it was handled.

worded paragraph in the statement of the claim that does not mention Santiago specifically (Doc. 1 ¶13d), it is buried amid paragraphs that plainly pertain to Defendants' treatment of Santiago. Thus, it is no wonder that Defendants were surprised by the EEOC's pursuit of a broader "policy" claim in addition to its claim regarding the failure to accommodate Santiago's practice of wearing a nose ring.

Assuming arguendo that the EEOC can now properly pursue this claim in the face of its failure to establish that Defendants violated Santiago's rights under Title VII, the EEOC is not entitled to any relief on its policy claim. The EEOC has not shown that any policy or practice of DAI resulted in anyone being denied a religious accommodation to which he or she was entitled by Title VII; the lack of evidence on this point was conceded by counsel for the EEOC during the bench trial phase of the case. (See Doc. 146 at 11). Santiago is the only person to have complained about the way DAI handled requests for waiver of its uniform policy; there is no evidence of any other action being filed by any other individual or by the EEOC.

Moreover, through the trial testimony of Mr. Lawrence, DAI established that it has now changed its practice regarding processing of requests for religious waivers and that it no longer requests supporting documentation from employees who seek to deviate from the uniform policy for religious reasons. Although Mr. Lawrence acknowledged that the reason for the change in practice was the instant case, and such changes are viewed with a skeptical eye by the courts,[6] the EEOC has not persuaded the Court—assuming for the sake

---

[6]See NAACP v. City of Evergreen, 693 F.2d 1367, 1370 (11th Cir. 1982) ("Courts should keep in mind the oft-repeated observation that 'reform timed to anticipate or blunt the

of argument that DAI's former practice was violative of Title VII—that there is a danger that such a practice is likely to continue in the future.[7]  Thus, although a court may award injunctive relief even when the complained-of conduct has ceased,[8] in this case there is no evidence that there has been a prior or subsequent complaint of discrimination against these Defendants; the alleged discriminatory conduct is limited to asking for information supporting a request for a deviation from a company-wide uniform policy; the one incident of discrimination that has been alleged was not proven at trial; and the challenged practice has been abandoned.  Under the totality of these circumstances, equitable relief is not warranted.

Furthermore, the EEOC is not entitled to punitive damages in this case.  First, the EEOC only pled punitive damages with regard to Santiago, not for its own benefit.  (See Compl. at 5 ¶ 5 (requesting that the Court "[o]rder Defendants to pay Santiago punitive

---

force of a lawsuit offer[s] insufficient assurance that the practice sought to be enjoined will not be repeated.'" (quoting James v. Stockholm Valves & Fittings Co., 559 F.2d 310, 354-55 (5th Cir. 1977))).

[7]The EEOC argues that based on the March 20, 2009 deposition testimony of Miller, there is a question as to whether DAI has in fact abandoned its policy of seeking verification. However, that deposition was taken by Defendants once Miller became unavailable for trial, and Defendants had not asked Miller any questions when the EEOC deposed him in August 2008.  No questions were asked regarding any change in policy that may have been made in the interim.  The Court trusts that Miller has been advised by Lawrence that the practice of seeking third party verification has been abandoned.

Additionally, the Court has not overlooked the email from Defendants' counsel to the EEOC's counsel stating that the policy would continue if this Court determined that the EEOC had failed to state a policy claim independent of the charge of discrimination on behalf of Santiago.  (Ex. 2 to Doc. 154).  However, this email between counsel does not dictate a result other than that reached in the text of this Order.

[8]See City of Evergreen, 693 F.2d at 1370 ("[T]he power to issue an injunction survives discontinuance of the illegal conduct sought to be enjoined.").

damages for Defendants' malicious and reckless conduct described above, in amounts to be determined at trial")). Absent a finding of discrimination against Santiago, there is no basis for an award of damages of any kind to her. And, as the EEOC has not sought an award of punitive damages to itself, it may not now obtain one.

Moreover, there is no basis for an award of punitive damages in this case in any event. Such damages are available where an employer has engaged in intentional discrimination "with malice or with reckless indifference to . . . federally protected rights." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999). "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Id. at 536. "Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'" EEOC v. W&O, Inc., 213 F.3d 600, 611 (11th Cir. 2000) (citation and internal quotation omitted) (alteration in original). To prevail on a claim for punitive damages, a "plaintiff must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to his federally protected rights." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1280 (11th Cir. 2002).

DAI's former practice in its processing of religious accommodation requests does not rise to this level. Although DAI now concedes that the practice of seeking corroboration of

an employee's proposed religious practice was perhaps "excessively enforced,"⁹ DAI plainly made an effort to accommodate workers who made requests. Moreover, the law regarding what an employer may or may not do in handling such requests is undeveloped and far from settled. The EEOC's own publications acknowledge that some inquiry into the sincerity of an employee's belief as well as into the religious nature of the belief is appropriate.¹⁰ Indeed, if the rule were otherwise, an employer would have to grant an accommodation any time an employee requested one, even if there were not a sincerely-held religious belief but instead only a purely personal or stylistic preference. And, it cannot be said that "research" regarding a religious practice amounts per se to impermissible questioning of the "validity" of a religion rather than of the sincerity of the person holding the religious belief or of the religious nature of the belief.¹¹ Even if it did, it certainly does not, in and of itself, rise to the level of "malice"

---

⁹(See Doc. 146 at 17).

¹⁰See EEOC Compliance Manual, § 12-I.A.3 (2008) ("If . . . an employee requests religious accommodation, and an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief or practice, the employer would be justified in seeking additional supporting information."); see also id. § 12-IV.A.2 ("An employee who fails to cooperate with an employer's reasonable request for verification of the sincerity or religious nature of a professed belief risks losing any subsequent claim that the employer improperly denied an accommodation. By the same token, employers who unreasonably request unnecessary or excessive corroborating evidence being held liable for denying a reasonable accommodation request . . . .").

¹¹Courts have been cautioned against inquiry into "validity" of religious beliefs. See, e.g., Redmond v. GAF Corp., 574 F.2d 897, 900 (7th Cir. 1978) (noting the Supreme Court's admonishment in Fowler v. Rhode Island, 345 U.S. 67, 70 (1953), that "[i]t is no business of courts to say . . . what is a religious practice or activity"). Similarly, it does not seem appropriate for employers to make accommodations conditional upon their determination of the validity of an employee's belief or practice. Despite the impropriety of inquiry into "validity," however, the matter of determining whether a belief is sincerely held is different. Indeed, as a matter of common sense an employer must be permitted some inquiry into the

or "reckless disregard."

In sum, even if the EEOC had properly pled or presented a policy claim apart from its claim regarding the treatment of Santiago, the Court concludes that the EEOC has failed to prove that DAI's policies or Miller's conduct on behalf of DAI warrants injunctive relief or punitive damages. Therefore, the EEOC's requests for such relief are denied.

It is **ORDERED** and **ADJUDGED** as follows:

1. As set forth herein, the Court finds that Plaintiff has not established an entitlement to punitive damages or injunctive relief in this case. Plaintiff's ore tenus motion for judgment

---

purported beliefs of an employee before the duty to accommodate arises. See Bushouse v. Local Union 2209, United Auto., Aerospace & Agric. Implement Workers, 164 F. Supp. 2d 1066, 1075 (N.D. Ind. 2001). In the absence of a right to make such an inquiry, an employer would simply be required to accept any self-serving statement of an employee that the employee had a belief that conflicted with a requirement of the job. Id. Under such a scheme, all statements of belief would have to be automatically accepted as sincerely held and be accommodated. Prohibiting employers from making limited inquiry regarding the practice for which accommodation is sought would negate the requirement that the practice for which accommodation is sought be based on a sincerely held religious belief.

The difference between an employer's insistence that a request for accommodation be based on a *valid* religious belief and the employer's consideration of the *sincerity* of a belief is subtle but crucial. The relevant question is whether the belief is sincerely held as opposed to merely a personal preference. See Vetter v. Farmland Indus., Inc., 120 F.3d 749, 752 (8th Cir. 1997) (observing that purely personal preferences do not require accommodation). In resolving this question, the employer should not be concerned with whether the belief is consistent with mainstream doctrine or even consistent with the beliefs of a single other person. Determination of sincerity is a delicate task, but an employer is entitled to investigate whether the belief is sincere and religious in nature. When a practice is not obviously based on religious belief, an employee should expect inquiry by an employer asked to accommodate the practice. See Seshadri v. Kasraian, 130 F.3d 798, 800 (7th Cir. 1997) ("[A] person who seeks to obtain a privileged legal status by virtue of his religion cannot preclude inquiry designed to determine whether he has in fact a religion."); Sidelinger v. Harbor Creek Sch. Dist., No. CIV 02-62 ERIE, 2006 WL 3455073, at *15 (W.D. Pa. Nov. 29, 2006) ("Where the claimed belief does not appear to be a recognizable religious belief or practice, the objector must expect that his employer will inquire into the religious basis of the belief.").

as a matter of law on its policy claim (see Doc. 133) is **DENIED**.

    2. Defendants' ore tenus motion for judgment as a matter of law (see Doc. 131) is **DENIED as moot**.

    3. In accordance with this Order and with the jury's verdict of April 22, 2009 (Doc. 139), the Clerk is directed to enter a judgment providing that Plaintiff shall take nothing from the Defendants in this action. Thereafter, the Clerk shall close this file.

    **DONE** and **ORDERED** in Chambers, Orlando, Florida this 28th day of July, 2009.

*[signature]*

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party